March 16, 1910.

No. 4931.

(Court of Appeal, Parish of Orleans.)

## JACOB NIENABER vs. MISS MARY McCABE.

Dart & Kernan for plaintiff and appellant.

Fisher and Brewer for defendant and appellee.

GODCHAUX, J.—The primary facts and issues are correctly stated in that portion of the opinion rendered in the lower court, which is here quoted:

"Defendant obtained an injunction against the writ of seizure and sale issued herein, on the ground of payment.

"Plaintiff, under the authority of Article 741, Code of Practice, ruled defendant to prove the truth of the facts alleged in her opposition.

"From the evidence adduced on the trial of said rule I gather that defendant, Miss McCabe, was desirous of purchasing the property in question from its owner, Francis D. McGuire, for nine hundred dollars. McGuire insisted upon the sale being for cash. Not having the cash, defendant applied to Robert J. Maloney who consented to loan her the amount. An act of sale was then passed on March 31, 1905, before Maloney, as notary, from McGuire to defendant for the price of nine hundred and fifty dollars (why $950.00 when the agreed price was $900, has not been explained), payable fifty dollars cash, and the balance in a note of the purchaser for nine hundred dollars, dated March 31, 1905, maturing one year after date, with eight per cent. yearly interest from date, secured by mortgage and vendor's privilege on the property sold. The property was incumbered with a previous mortgage granted thereon by McGuire for the sum of five hundred dollars, with interest. Maloney paid that mortgage to the last holder of the mortgage note, who intervened in the act and granted a release of the incumbrance. Ma-

loney then gave the balance of the nine hundred dollars to McGuire, thereby acquiring from him the mortgage note representing the credit portion of the sale.

"Agreeably to an understanding with Maloney that she might extinguish her obligation by partial payments, as suited her convenience, Miss McCabe as early as April 17, 1905, made a payment to him on the note, of two hundred and fifty dollars. She subsequently paid him, on October 7, 1905, fifty dollars; on April 16, 1906, two hundred and fifty dollars (of which $50 was for interest, and $200 on account of the principal); on November 10, 1906, one hundred dollars; on January 7, 1907, one hundred dollars; and, on May 15, 1907, two hundred dollars; thus paying the note in full. When she made these payments she did not require the production of the note, not thinking it necessary, and contented herself with taking Maloney's receipts. After paying the note she asked Maloney for a receipt showing that her mortgage was clear. In answer to her request Maloney had one J. Vic Leclerc to appear before him, as notary, on December 30, 1907, and give a release of the mortgage as last holder of the note, payment of which in full he (Leclerc) acknowledged to have received. The release contained the false declaration that the note had been presented and exhibited to the notary, duly canceled and erased. Maloney then gave defendant a copy of the release and left her under the belief that her property was clear of incumbrance and her debt extinguished. The mortgage was actually canceled from the books of the recorder.

"Plaintiff, Nienaber, bought the note from Maloney; at what time, will hereafter be considered. It bears the following indorsements:

" 'March 13, '06. Interest on the within note is paid to date, and note is renewed for one year without novation.

" 'Interest paid March 31, 1907.

" 'Interest paid March 31, 1908.'

"The first endorsement is in Maloney's handwriting. The others are in that of plaintiff.

"The renewal of the note was made without defendant's knowledge or consent.

"In foreclosing plaintiff made no allowance for interest, and claimed it from the date of the note.

"Defendant contends:

"**First.** That Nienaber acquired the note after maturity, and subject to all equities.

"**Second.** That Maloney acted as his agent in receiving payments from defendant."

The first question, then, is when did plaintiff acquire the note? If he acquired it after its original maturity—namely, March 31, 1906—or after the maturity expressed in the purported renewal executed by Maloney on March 16, 1906, then all payments made prior to plaintiff's acquisition would be good as against him, in as much as he would then stand in the same position as his transferee, Maloney, to whom, as the then holder of the note, these payments were actually made.

The lower Court disregarded the testimony of the only two witnesses upon this point—properly rejecting as untrustworthy that of Maloney, examined as Miss McCabe's witness; and finding that of Nienaber, the holder, valueless because so vague and contradictory—and thereupon fixed March 31, 1907, as the date of Nienaber's acquisition, on the ground that his possession then, and for the first time, is evidenced by the indorsement in his own handwriting of the receipt of the interest. This finding

— 284 —

was erroneous and apparently resulted from the mistaken impression entertained by the lower Court that the burden rested on Nienaber to establish this date. On the contrary, being the holder, the presumption exists in Nienaber's favor that he acquired the note prior to its maturity.

"The transferee of a negotiable instrument, such as a promissory note made payable to the order of the maker and by him indorsed in blank, holds the instrument clothed with the presumption that it was negotiated for value in usual course of business, before maturity and without notice of any equities between the prior parties to the instrument."

**Cochrane vs. Dickenson, 40 An. 127; Negotiable Inst. Act of 1904, Sec. 45.**

This presumption still survives even if we reject, as did the lower Court, all other evidence upon this subject, and a finding that Nienaber acquired before maturity, would consequently be justifiable and proper.

We believe, however, that although Nienaber's testimony is contradictory, yet on the whole, it fairly supports such a finding and sufficiently establishes April 14, 1905, as the true date upon which he acquired the note in good faith and for full value from Maloney.

This being true, his acquisition precedes in date any payments that Miss McCabe made to Maloney and brings us to a consideration of the question as to whether or not Maloney acted as Nienaber's authorized agent in receiving these payments from her.

Here again Miss McCabe has the burden of proving that she made these payments to one authorized to receive them on behalf of the holder, Nienaber.

Her own testimony fails to support her contention, for it shows conclusively, as do the receipts she secured from

Maloney, as the real creditor and holder of the note, and not in a representative capacity.

The testimony of Maloney, even if it were worthy of consideration, would lend no support to her claim, while the evidence of Nienaber, taken as a whole, fails to show that he constituted Maloney as his agent to collect the note, in the sense that it was ever contemplated that a payment to Maloney would be considered good as a payment to Nienaber as principal. That Nienaber received from Maloney the annual interest payments instead of calling directly upon the maker for these payments, is insufficient to prove the alleged agency and his failure to apply directly to the maker is wholly immaterial.

Were we to construe the evidence most strongly against Nienaber, the most extreme view that we could take would be that Maloney was authorized in his behalf to collect the annual interest and the whole of the principal; but under this most extreme view of the evidence, no authority is established to collect the note in piece-meal or by partial payments.

Were the question of existence or non-existence of the purported authority in doubt, the fact still remains that Nienaber never, from the time of his acquisition, parted with possession of the note; but, on the other hand, Miss McCabe made these sundry partial payments to Maloney without requiring a view of the note or an indorsement thereon of the evidence of such payments. Had she exercised the required caution, Maloney's fraud and the consequent loss could never have occurred, and she must bear the consequences of her indiscretion.

In almost all of its aspects this case cannot be distinguished from Keystone Life Insurance Co. vs. Mrs. E. A. McArdle, wife of A. L. Blum, recently decided by us.

The lower Court consequently erred in perpetuating

the injunction, and thus quashing the executory process. The injunction should have been sustained simply to the extent of restricting the claim of plaintiff in executory process so far as the interest is concerned, for it is shown that plaintiff has received all interest to March 31, 1908.

It is, therefore, ordered that the judgment of the lower Court be amended so that the injunction be perpetuated to the extent only of restricting the claim for interest in the executory process proceedings to the interest accruing from March 31, 1908; costs of the lower Court to be paid by Nienaber, and the costs of this Court by Miss McCabe.

Judgment amended.

March 21, 1910.

Rehearing refused April 4, 1910.

Writ refused by Supreme Court May 14, 1910.